# CIRCUIT COURT OF BALTIMORE CITY.

Filed February 8, 1927.

MARY A. O'BRIEN, PLAINTIFF,
VS.
CHARLES A. MORAN, DEFENDANT.

*Robert Biggs* for plaintiff.
*Daniel S. Sullivan* for defendant.

STEIN, J.—

The substantial object of this proceeding is to have this Court d e c r e e that the defendant holds leasehold property in this City, known as No. 1615 Aisquith street, in trust, for the plaintiff, his sister, as absolute beneficial owner.

The case was heard, on bill, answer and testimony taken in open Court. The testimony, not excepted to, shows: The mother of the parties for many years owned and made a home for herself and children, in that property; that on May 18, 1909, she assigned it, with two other properties, to the defendant, her son; by deed, absolute in form, duly executed, acknowledged and recorded, reciting "a consideration of five dollars and other valuable considerations, the receipt whereof is hereby acknowledged"; the mother died February 14, 1910, leaving a last will and testament, executed in 1904; which she gave to Monsignor Foley, he later gave it to the plaintiff; she, on her mother's death, gave it to the defendant, who, while he has had it ever since, did not offer it for probate: although it not only attempted to dispose of the properties named in the deed, in a manner inconsistent therewith, but contains bequests to the plaintiff and to the grandchildren of the testatrix; that in March or April, 1910, about one month after the mother's death, the plaintiff and her husband, at the defendant's request, moved into this property, remained there ever since; where the defendant lived with them for about two years, married and left; while living there,

paid his sister twenty dollars per month board, deducted therefrom ten dollars per month; the estimated pro rata of the monthly expenses of the above house; which expenses he paid when due; after his marriage, as he did not pay board to his sister, she paid him the ten dollars monthly pro rata of expenses; the defendant did not claim to own the house, for more than thirteen years, i. e., from 1910, when his sister and husband went there to live, until December 26, 1923; on which date, after a quarrel with her, he claimed ownership; ordered out her and her husband, on their refusal to go, instituted the ejectment suit named in the bill, whereupon, these proceedings were brought; (a) to restrain the prosecution of that suit; (b) to have the Court declare that the plaintiff, not her brother, owned the house.

The plaintiff produced testimony, taken subject to exception, of statements the mother made to the plaintiff, out of the presence and hearing of the defendant; which tends to show that the mother promised the plaintiff to assign the house to the defendant, who was to hold it for the plaintiff's sole benefit and use, provided she would live with and care for her mother.

The defendant, who denies much of the testimony produced on behalf of the plaintiff, offered testimony to explain and qualify the rest, insists, not only that the burden of proof is on the plaintiff to establish her case, but that the testimony to establish it must be of high quality, clear and convincing; and that no intendment in her favor should be drawn from testimony offered on plaintiff's behalf.

Without conceding this to be the rule, but measuring the plaintiff's testimony by it; and measuring that on behalf of the defendant by the proper rule, I find from all testimony not excepted to, the following, viz:

1. That for many years after her marriage the plaintiff lived with her invalid mother, neglected her husband and her home so to do; waited upon, cared for and gave her mother those services a loving and faithful daughter could.

2. That the deed of the property from the mother to the defendant was without consideration, the defendant so testifying.

3. That immediately after the mother's death, the defendant invited the plaintiff and her husband to come to the mother's old home (the property in question) in doing so used the following language: "Ain't you coming down to the old home to live?" "Ma is gone now and there will be no more trouble with O'Brien" (the plaintiff's husband).

*"The house is yours, come down and take it and do as you please."*

4. That when the question of "the fixing of the amount of alimony was about to be heard in the divorce suit against him, the defendant told the plaintiff as well as his counsel, that the above named property belonged to the plaintiff, and in asking her to testify in the alimony suit about the ownership of the property, said to her, "You know the *house is yours* and I derive no income from it, and you know when you go to swear to that *you are swearing to the truth that the house is yours.*" Saying to his counsel in the presence of the plaintiff's husband, "That the *house was only left in his care for his sister and that he didn't have anything to do with it and the property was only in his care for his sister.*"

5. That, notwithstanding the post war increase in rental values in this City, the defendant allowed the plaintiff to live in that house for nearly fourteen years; she in the meanwhile paying him the monthly estimated pro rata of the yearly taxes, water and ground rents, many times less in amount than the fair rental value of the property, and without objecting he saw her spend large sums on the property in betterments, and repairs; when under his present contention, the plaintiff was his tenant at will, who, on completion of any of the betterments or repairs, could be put out without being reimbursed for their costs, or receiving any benefit therefrom.

6. That, he did not claim to own the house, until December 26, 1923, when after a trivial dispute, he claimed ownership, demanded possession, and on its refusal, instituted the above named ejectment suit.

These facts are so found, only after weighing the defendant's testimony in denial and explanation; without giving any persuasive force to his answer in the divorce suit; that answer being in the form in common use. Such facts

g've full credit to his above statement "that the house was only left in his care for his sister and that he didn't have anything to do with it," and so entitle the plaintiff to relief; she must repay with interest the sewer charge of one hundred and thirty-five dollars, named in the testimony; and all sums the defendant paid during this litigation for taxes, water rent, ground rent and insurance, less any sums received on account.

I find that the defendant in accepting and retaining (but not collecting) the checks and money orders named in the evidence acted within his rights; he did so on competent legal advice, and had the right to retain them, in payment of the pro rata of the above named monthly expenses on the house.

I will sign a decree in accordance herewith, sustaining the defendant's exceptions to the testimony, and requiring him to pay costs.